Exhibit "A"

# PROMISSORY NOTE

**$270,000.00**

January 1?  , 2019

**Palisades Park, New Jersey**

**FOR VALUE RECEIVED**, the undersigned promises to pay to **IL YEON KWON**, or order, the principal sum of **TWO HUNDRED SEVENTY THOUSAND ($270,000.00) DOLLARS,** with interest on the unpaid principal balance from the date of this Promissory Note, until paid. Interest at the yearly interest rate of 5.5 % per cent per annum will be charged on that part of the principal, which has not been paid from the date of this Note until all principal has been paid. Principal and interest shall be paid based on a Five (5) year payment schedule with monthly payments of $5,157.31 commencing February 1, 2020 until January 1, 2025 and $5,157.59 on February 1, 2025 on which date all outstanding principal shall be due and payable.

The principal and interest shall be payable at 460 Sylvan Avenue, Englewood Cliffs, New Jersey 07632 or such other place as the holder hereof may designate in writing.

As security for the payment of the monies due and owing hereon, the undersigned has executed and delivered to **IL YEON KWON** a Stock Pledge and Security Agreement, and Financing Statements of even date herewith.

Notwithstanding the foregoing, the unpaid balance of the principal sum of this Note and interest thereon shall become immediately due and payable, at the option of the holder hereof, in the event of the following:

1. Default in excess of thirty **(30)** days of any payment due hereunder; or

2. Revocation of the **Plenary Retail Consumption License No.** ▮▮▮▮▮011 **(Previous #** ▮▮▮▮▮▮**010)** issued to the undersigned by the Borough of Englewood Cliffs Issuing Authority.

3. Suspension of the aforesaid Liquor License in excess of sixty (60) days, except that a suspension of not more than sixty **(60)** days shall not constitute a default, provided that the undersigned

makes timely payment of all installments due hereunder during the term of the suspension.

4. Default by the undersigned in the performance of any term, condition or covenant contained in a certain Membership Pledge Agreement entered into between the undersigned and the holder dated even date herewith.

5. The reorganization, merger or consolidation of the undersigned, or the making of any agreement therefore, without the prior consent of the holder in writing.

6. The institution of any suit affecting the undersigned and deemed by the holder to adversely affect its interest hereunder or in the collateral which secures this Note.

7. The sale, transfer or assignment of the bar/restaurant/tavern business located at 464 Sylvan Avenue, Englewood Cliffs, New Jersey or of the **Plenary Retail Consumption Liquor License No.** ( ___ **011** issued to the undersigned by the Englewood Cliffs Municipal Issuing Authority, or any change of ownership in the business or in the undersigned corporation. The Place to Place transfer of said license or business shall not be considered a default.

8. The filing of a petition by or against any of the undersigned for relief under any bankruptcy or insolvency law; or

9. An assignment by any of the undersigned for the benefit of creditors; or

10. Any default in the covenants and conditions of the Security Agreement given to secure this Note; or

11. Any default in the covenants and conditions of this Note.

Upon thirty **(30)** days notice of default hereunder, the holder is empowered to sell, assign and deliver the whole or any part of the collateral which secures this note at a public or private sale at which the holder may bid. After deducting all expenses incidental to or arising from such sales, the holder may apply the residue of the proceeds thereof to the payment of the indebtedness, as it shall deem proper, and return the excess, if any, to the undersigned. The term "collateral" as used in this Note shall mean any

fund, guarantee, other property rights therein of any nature whatsoever of the proceeds thereof which may have been, are, or hereafter may be pledged, directly or indirectly, by the undersigned or others, in connection with or as security for the indebtedness or any part thereof.

In the event of default, if this Note is placed with an attorney for collection, the maker, agrees to pay all costs of collection and satisfaction of the monies due hereunder or in connection with the administration, supervision, protection or realization upon the collateral, including an attorney's fee of **15%** of the amount of this Note, which is hereby agreed to be just and reasonable and which shall be added to the amount due under this Note and recoverable with the amount due under this Note.    The Holder does not give up its right to declare a default due to any previous delay of failure to declare a default.

The makers, endorsers and guarantors of this Note hereby waive presentment for payment, demand, notice of non-payment and dishonor, protest and notice of protest, waive, trial by jury in any action or proceeding arising on, out of, under or by reason of this Note; consent to any renewals, extensions and partial payments of this Note or to the indebtedness for which it is given without notice to them; and consent that no such renewals, extensions or partial payments shall discharge any party thereto from liability hereon in whole or in part.

12. Application of Payments.    Payments received under this Note, (including prepayments) shall be applied first to accrued interest and then to installments of principal, in inverse order of their maturity dates. Prepayment of principal is permitted at the option of Borrower. Notwithstanding the previous sentence, Lender shall have the option to apply any payment received under this Note first to any collection or other expenses or charges to which Lender may be entitled under this Note or any other document executed in connection with the Note.

13. Legal Effect of Promise.    Borrower shall have no right to fail, neglect, offset or refuse to make any payments under this Note by reason of any claim, demand or suit of any nature or kind alleged

to exist against Lender. Any such suit, claim or demand shall be made in an independent, legal action during which all payments on this Note shall continue unabated.

14. Remedies.   Upon the occurrence of a default, Lender may exercise any rights and remedies available under this Note, any other document executed in connection with this Note, or at law or in equity or with respect to any collateral for this Note. Lender's remedies include the right to declare all principal and other sums outstanding under this Note to be immediately due and payable in full, to collect all sums owing from Borrower and to execute upon any and all documents executed in connection with this Note. Lender's delay or failure to accelerate this Note or to exercise any other available right or remedy shall not impair any such right or remedy, nor shall it be construed as a forbearance or waiver.

15. Governing Law and Jurisdiction.    This Note shall be governed by, and construed in accordance with the laws of the State of New Jersey. Borrower hereby consents to the exclusive jurisdiction of the federal and state courts of the State of New Jersey with respect to all matters arising under or relating to this Note or any documents executed in connection herewith.

16. Severability. If any term or provision of this Note is held to be invalid, the remaining terms and provisions of this Note shall not be affected and shall remain in full force and effect.

17. Binding Nature. This Note shall be binding on Borrower and its, his, her or their heirs or successors and assigns. This Note shall be for the benefit of Lender and its successors and assigns.

18. Joint and Several Liability. Each Borrower (if more than one) shall be jointly and severally liable for all sums owing under this Note.

19. Jury Trial Waiver. Borrower hereby waives presentment, demand, protest, notice of protest, diligence, and all other demands and notices in connection with the payment and enforcement of this Note. BORROWER HEREBY WAIVES ANY RIGHT TO REQUEST A TRIAL BY JURY IN ANY LITIGATION WITH RESPECT TO THIS NOTE AND REPRESENTS THAT COUNSEL HAS BEEN

CONSULTED SPECIFICALLY AS TO THIS WAIVER. By accepting this Note, Lender also waives its

right to request a trial by jury.

**ATTEST:**

JJ BADA 464 OPERATING CORP.

By: ▮▮▮▮▮

JIN CHUNG, President

STATE OF NEW JERSEY, COUNTY OF BERGEN }} SS.

BE IT REMEMBERED, that on this *13th* day of January, 2020, before me the subscriber, a Notary Public personally appeared JIN CHUNG, President of JJ Bada 464 Operating Corp., who, I am satisfied, is one of the persons mentioned in the within instrument, to whom I first made known the contents thereof, and thereupon he acknowledged that he signed, sealed and delivered the same as his voluntary act and deed for the uses and purposes expressed therein.

Notary Public *Michael S. kinn*
*An Atty of NJ*

**PERSONAL GUARANTY**

For value received, we and each and all of the endorsers hereon, jointly and severally, guarantee the payment of the principal and interest of the within Note, as and when the said principal and/or interest shall become due, and of any extensions of the said Note; we do hereby accept all of the provisions of the said Note and authorize the maker, without notice to us or to any of us, to obtain an extension or extensions of the said Note in whole or in part, and we do hereby waive presentment, notice of non-payment, and protest. Suit may be brought by the holder of this Note against one or more or all of us at the option of the said holder, whether a suit has been commenced against the maker or not, and in any such suit, the maker may be joined with one or more, or all of us at the option of the holder; we do further hereby waive any and all exemptions existing by virtue of any state of federal statute now in effect or at any time hereafter becoming effective.

~~JIN CHUNG~~
~~SSN:~~

BRANDON PARK
SSN: ▮▮▮

STATE OF NEW JERSEY, COUNTY OF BERGEN}}SS

BE IT REMEMBERED, that on this *13th* day of January, 2020, before me the subscriber, an Attorney at Law of the State of New Jersey or Notary Public personally appeared ~~JIN CHUNG~~ and BRANDON PARK, who, I am satisfied, is one of the persons mentioned in the within instrument, to whom I first made known the contents thereof, and thereupon he acknowledged that he signed, sealed and delivered the same as his voluntary act and deed for the uses and purposes expressed therein.

Notary Public

*Michael S. kinn*
*An Atty of NJ*

**Your loan payment will be $5,157.31.**

# Payment Summary

| Event | Amount | Term | Period |
|-------|--------|------|--------|
| Loan | $270,000.00 | 1 | |
| Payment | $5,157.31 | 59 | Monthly |
| Payment | $5,157.59 | 1 | |

# Payment Schedule

| Event | Loan | Payment | Interest | Principal | Balance |
|-------|------|---------|----------|-----------|---------|
| Loan 1 | $270,000.00 | | $0.00 | $0.00 | $270,000.00 |
| Payment 1 | | $5,157.31 | $1,237.50 | $3,919.81 | $266,080.19 |
| Payment 2 | | $5,157.31 | $1,219.53 | $3,937.78 | $262,142.41 |
| Payment 3 | | $5,157.31 | $1,201.49 | $3,955.82 | $258,186.59 |
| Payment 4 | | $5,157.31 | $1,183.36 | $3,973.95 | $254,212.64 |
| Payment 5 | | $5,157.31 | $1,165.14 | $3,992.17 | $250,220.47 |
| Payment 6 | | $5,157.31 | $1,146.84 | $4,010.47 | $246,210.00 |
| Payment 7 | | $5,157.31 | $1,128.46 | $4,028.85 | $242,181.15 |
| Payment 8 | | $5,157.31 | $1,110.00 | $4,047.31 | $238,133.84 |
| Payment 9 | | $5,157.31 | $1,091.45 | $4,065.86 | $234,067.98 |
| Payment 10 | | $5,157.31 | $1,072.81 | $4,084.50 | $229,983.48 |
| Payment 11 | | $5,157.31 | $1,054.09 | $4,103.22 | $225,880.26 |
| Payment 12 | | $5,157.31 | $1,035.28 | $4,122.03 | $221,758.23 |
| Payment 13 | | $5,157.31 | $1,016.39 | $4,140.92 | $217,617.31 |
| Payment 14 | | $5,157.31 | $997.41 | $4,159.90 | $213,457.41 |

| | | | | |
|---|---|---|---|---|
| Payment 15 | $5,157.31 | $978.35 | $4,178.96 | $209,278.45 |
| Payment 16 | $5,157.31 | $959.19 | $4,198.12 | $205,080.33 |
| Payment 17 | $5,157.31 | $939.95 | $4,217.36 | $200,862.97 |
| Payment 18 | $5,157.31 | $920.62 | $4,236.69 | $196,626.28 |
| Payment 19 | $5,157.31 | $901.20 | $4,256.11 | $192,370.17 |
| Payment 20 | $5,157.31 | $881.70 | $4,275.61 | $188,094.56 |
| Payment 21 | $5,157.31 | $862.10 | $4,295.21 | $183,799.35 |
| Payment 22 | $5,157.31 | $842.41 | $4,314.90 | $179,484.45 |
| Payment 23 | $5,157.31 | $822.64 | $4,334.67 | $175,149.78 |
| Payment 24 | $5,157.31 | $802.77 | $4,354.54 | $170,795.24 |
| Payment 25 | $5,157.31 | $782.81 | $4,374.50 | $166,420.74 |
| Payment 26 | $5,157.31 | $762.76 | $4,394.55 | $162,026.19 |
| Payment 27 | $5,157.31 | $742.62 | $4,414.69 | $157,611.50 |
| Payment 28 | $5,157.31 | $722.39 | $4,434.92 | $153,176.58 |
| Payment 29 | $5,157.31 | $702.06 | $4,455.25 | $148,721.33 |
| Payment 30 | $5,157.31 | $681.64 | $4,475.67 | $144,245.66 |
| Payment 31 | $5,157.31 | $661.13 | $4,496.18 | $139,749.48 |
| Payment 32 | $5,157.31 | $640.52 | $4,516.79 | $135,232.69 |
| Payment 33 | $5,157.31 | $619.82 | $4,537.49 | $130,695.20 |
| Payment 34 | $5,157.31 | $599.02 | $4,558.29 | $126,136.91 |
| Payment 35 | $5,157.31 | $578.13 | $4,579.18 | $121,557.73 |
| Payment 36 | $5,157.31 | $557.14 | $4,600.17 | $116,957.56 |
| Payment 37 | $5,157.31 | $536.06 | $4,621.25 | $112,336.31 |
| Payment 38 | $5,157.31 | $514.87 | $4,642.44 | $107,693.87 |
| Payment 39 | $5,157.31 | $493.60 | $4,663.71 | $103,030.16 |
| Payment 40 | $5,157.31 | $472.22 | $4,685.09 | $98,345.07 |
| Payment 41 | $5,157.31 | $450.75 | $4,706.56 | $93,638.51 |

| Payment 42 | $5,157.31 | $429.18 | $4,728.13 | $88,910.38 |
| Payment 43 | $5,157.31 | $407.51 | $4,749.80 | $84,160.58 |
| Payment 44 | $5,157.31 | $385.74 | $4,771.57 | $79,389.01 |
| Payment 45 | $5,157.31 | $363.87 | $4,793.44 | $74,595.57 |
| Payment 46 | $5,157.31 | $341.90 | $4,815.41 | $69,780.16 |
| Payment 47 | $5,157.31 | $319.83 | $4,837.48 | $64,942.68 |
| Payment 48 | $5,157.31 | $297.65 | $4,859.66 | $60,083.02 |
| Payment 49 | $5,157.31 | $275.38 | $4,881.93 | $55,201.09 |
| Payment 50 | $5,157.31 | $253.00 | $4,904.31 | $50,296.78 |
| Payment 51 | $5,157.31 | $230.53 | $4,926.78 | $45,370.00 |
| Payment 52 | $5,157.31 | $207.95 | $4,949.36 | $40,420.64 |
| Payment 53 | $5,157.31 | $185.26 | $4,972.05 | $35,448.59 |
| Payment 54 | $5,157.31 | $162.47 | $4,994.84 | $30,453.75 |
| Payment 55 | $5,157.31 | $139.58 | $5,017.73 | $25,436.02 |
| Payment 56 | $5,157.31 | $116.58 | $5,040.73 | $20,395.29 |
| Payment 57 | $5,157.31 | $93.48 | $5,063.83 | $15,331.46 |
| Payment 58 | $5,157.31 | $70.27 | $5,087.04 | $10,244.42 |
| Payment 59 | $5,157.31 | $46.95 | $5,110.36 | $5,134.06 |
| Payment 60 | $5,157.59 | $23.53 | $5,134.06 | $0.00 |
| **Grand Total** | **$270,000.00** | **$309,438.88** | **$39,438.88** | **$270,000.00** | **$0.00** |

This amortization schedule is powered by: ©TimeValue Software

Calculator tips

Calculator disclaimer

Presented by TimeValue Software ©2019

## SECURITY AGREEMENT

**Loan Name:** from Il Yeon Kwon
**Loan Amount :** $270,000.00
**Interest Rate:** 5.5% Per Annum
**Maturity Date:** February 1, 2025.

    **THIS SECURITY AGREEMENT** is made on this ___7__ th day of ~~January~~ *Feburary*, 2020 (hereinafter referred to as "Agreement")

**BETWEEN,**

**JJ BADA 464 OPERATING CORP.,** a New Jersey Corporation with address at 333 Sylvan Avenue, Suite 106, Englewood Cliffs New Jersey 07632 and JIN CHUNG, individual who resides at _464  Sylvan Ave.  Englewood Cliffs, NJ_ (hereinafter referred to as "Purchaser/Debtor" or "Debtor"),     _07632_

**AND**

**Il Yeon Kwon,** *an individual* with address at c/o Noh & Kang, LLP 449 Broad Avenue, Unit 2-1, Palisades Park, New Jersey 07650 ( hereinafter referred to as "Seller" or "Secured Party").

## WITNESSETH:

    **Whereas,** seller and Purchaser/Debtor have, as of the date hereof, entered into a Liquor License Purchase Agreement (the "Purchase Agreement") pursuant to which Seller has agreed to sell to Purchaser/Debtor and Purchaser/Debtor has agreed to buy from Seller Seller's Plenary Retail Consumption License No. ███████010.

    **Whereas,** pursuant to the Purchase Agreement and in connection with a pledge made by Purchaser/Debtor to Seller, Purchaser/Debtor has agreed to execute a Security Agreement and related documents in form and substance satisfactory to Seller; and

    **Whereas,** Purchaser/Debtor granted this security interest to secure performance of the Purchaser/Debtor, guaranteeing the obligations under a certain commercial mortgage note or other agreement that Purchaser/Debtor executed on January ____, 2020, with a loan amount of

**Security Agreement, Page 1**

TWO HUNDRED SEVENTY THOUSAND DOLLARS AND 00/100 CENTS ($270,000.00) and maturing on **February 1, 2025**. (the "Note");

NOW, THEREFORE, in consideration of the execution of the Purchase Agreement by Seller, the mutual covenants herein contained and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

**DEFINITION.**

"Collateral" shall mean all of the property, wherever located, Purchaser/Debtor has the title, possession, use, any interest, or security interest in and all property of the same class or character acquired by Purchaser/Debtor, wherever located, and all proceeds, rents, profits and products thereof, and all substitutions, replacements and accessions thereto more specifically as follows:

All of Purchaser/Debtor s goods, inventories, machinery, fixtures, furniture, equipment, supplies, leasehold improvement, chattel papers, contract rights, goodwill, trade names, documents including but not limited to bills of landing, warehouse receipts, account receivables and general intangibles, whether currently owned by Purchaser/Debtor or acquired later.

All inventory which Purchaser/Debtor hold for ultimate sale or lease, or which has been or will be supplied under contracts of services, or which are raw materials, work in process, or materials used or consumed in Purchaser/Debtor's business.

All equipment including, but not limited to, all machinery, vehicles, furniture, fixtures, manufacturing equipment, farm machinery and equipment, shop equipment, office and recordkeeping equipment, and parts and tools.

**Security Agreement, Page 2**

All general intangibles Purchaser/Debtor now has or hereafter acquires including, but not limited to, tax refunds, applications for patents, patents, copyrights, trademarks, trade secrets, good will, trade names, customer lists, permits and franchises, payment intangibles, computer programs and all supporting information provided in connection with a transaction relating to computer programs, and the right to use Purchaser/Debtor's name.

All rights Purchaser/Debtor has now or in the future to payments including, but not limited to, payment for property or services sold, leased, rented, licensed, or assigned, whether or not Purchaser/Debtor has earned such payment by performance. This includes any rights and interests (including all liens and security interests) which Purchaser/Debtor may have by law or agreement against any Account Purchaser/Debtor or obligor of Purchaser/Debtor.

As additional collateral, Purchaser/Debtor assigns to Secured Party, a security interest in all of its right, title, and interest to any trademarks, trade names, contract rights, and leasehold interests in which Purchaser/Debtor now has or hereafter acquires.

Any additional tangible personal property that Purchaser/Debtor now owns or later acquires in connection with Purchaser/Debtor's business, including replacement inventory.

**SECTION 1. Grant of Security Interest.** To Secure the payment, performance and observance of any and all indebtedness, obligations and liabilities of any kind whatsoever of Purchaser/Debtor to Seller arising under the Purchase Agreement and the Note, Purchaser/Debtor hereby assigns and pledges to seller, and hereby grants to Seller a continuing first priority security interest in and to the following described property, whether now existing or hereafter acquired and wherever located (the "Collateral"):

(a) All fixtures, furniture and equipment set forth on Schedule A hereto;

**Security Agreement, Page 3**

(b) All of Purchaser/Debtor's inventory of liquor stock;

(c) All of Purchaser/Debtor's Accounts Receivable; and

(d) All Membership or Stock Interests in JJ BADA 464 OPERATING CORP.

(e) All proceeds of any and all of the foregoing Collateral and, to the extent not otherwise included, all payments under insurance (whether or not Seller is the loss payee thereof), payable by reason of loss or damage to or otherwise with respect to any of the foregoing Collateral.

**SECTION 2. Security for Obligations.** This Agreement secures the payment of all indebtedness, obligations and liabilities of Purchaser/Debtor now or hereafter existing under the Purchase Agreement and the Notes, whether for principal, interest, fees (including reasonable attorney's fees), expenses or otherwise, and all obligations of Purchaser/Debtor now or hereafter existing under this Agreement (all such indebtedness, obligations and liabilities referred to herein as the "Obligations" ).

**SECTION 3. Filing and Recording and Costs.** Purchaser/Debtor consents, without further notice, to Secured Party's filing or recording of any documents necessary to perfect, continue, amend or terminate its security interest. Upon request of Secured Party, Purchaser/Debtor must sign or otherwise authenticate all documents that Secured Party deems necessary at any time to allow Secured Party to acquire, perfect, continue or amend its security interest in the Collateral. Purchaser/Debtor will pay the filing and recording costs of any documents relating to Secured Party's security interest. Purchaser/Debtor ratifies all previous filings and recordings, including financing statements and notations on certificates of title. Purchaser/Debtor will cooperate with Secured Party in obtaining a Control Agreement satisfactory to Secured Party with respect to any

**Security Agreement, Page 4**

Deposit Accounts or Investment Property, or in otherwise obtaining control or possession of that or any other Collateral.

In the event that any recording or refiling thereof (or filing of any statements of continuation or assignment of any financing statements) is required to protect and preserve such security interest, Purchaser/Debtor, at its own cost and expense, shall cause the same to be re-recorded and /or re-filed at the time and in the manner requested by Secured Party provided that the Purchaser/Debtor has caused refilling of UCC-1, mortgage or Security Agreement.

Purchaser/Debtor hereby authorizes Secured Party to file or re file any financing statement or continuation statements in respect of the security interest granted pursuant to this Agreement which at any time may be required or appropriate, although the same may have been executed only by Secured Party, and to execute such financing statement on behalf of Purchaser/Debtor. Purchaser/Debtor hereby irrevocably designates Secured Party, its agents, representatives and designees, as agent and attorney- in-fact for Purchaser/Debtor for the aforesaid purposes

Purchaser/Debtor hereby authorizes Secured Party to do anything Secured Party deem reasonably necessary to protect the Collateral, and perfect and continue Secured Party's security interest in the Collateral. If Purchaser/Debtor fails to perform any of Purchaser/Debtor's duties under this Agreement or any other Loan Document, Secured Party is authorized without notice to Purchaser/Debtor, to perform the duties or cause them to be performed. These authorizations include, but are not limited to, permission to:

(a) Pay and discharge taxes, liens, security interests or other encumbrances at any time levied or placed on the Collateral.

**Security Agreement, Page 5**

(b) Pay any rents or other charges under any lease affecting the Collateral.

(c) Order and pay for repair, maintenance and preservation of the Collateral.

(d) File any financing statements on Purchaser/Debtor behalf and pay for filing and recording fees pertaining to the Collateral.

(e) Place a note on any chattel paper indicating Secured Party's interest in the Collateral.

(f) Take any action Secured Party feel necessary to realize on the Collateral, including performing any part of a contract or endorsing it in Purchaser/Debtor's name.

(g) Handle any suits or other proceedings involving the Collateral in Purchaser/Debtor's name.

(h) Prepare, file and sign Purchaser/Debtor's name to any necessary reports or accountings.

(i) Make an entry on Purchaser/Debtor's books and records showing the existence of this Agreement.

(j) Notify any Account Purchaser/Debtor of Secured Party's interest in the Collateral and tell the Account Purchaser/Debtor to make payments to Secured Party or someone else Secured Party name.

If Secured Party performs for Purchaser/Debtor, Secured Party will use reasonable care.

If Secured Party exercises the care and follow the procedures that Secured Party generally apply to the collection of obligations owed to Secured Party, Secured Party will be deemed to be using reasonable care. Reasonable care will not include: any steps necessary to preserve rights against prior parties; the duty to send notices, perform services or take any other action in connection with the management of the Collateral; or the duty to protect, preserve or

**Security Agreement, Page 6**

maintain any security interest given to others by Purchaser/Debtor or other parties. Secured Party's authorization to perform for Purchaser/Debtor will not create obligation to perform and Secured Party's failure to perform will not preclude Secured Party from exercising any other rights under the law or this Agreement. All cash and non-cash proceeds of the Collateral may be applied by Secured Party only upon Secured Party's actual receipt of cash proceeds against such of the Secured Debts, matured or unmatured, as Secured Party determine in Secured Party's sole discretion.

If Secured Party comes into actual or constructive possession of the Collateral, Secured Party will preserve and protect the Collateral. For purposes of this paragraph, Secured Party will be in actual possession of the Collateral only when Secured Party has physical, immediate and exclusive control over the Collateral and Secured Party has affirmatively accepted that control. Secured Party will be in constructive possession of the Collateral only when Secured Party has both the power and the intent to exercise control over the Collateral.

**SECTION 4. Protection of the Collateral.** Purchaser/Debtor shall defend the title to the Collateral against all claims and demands whatsoever. Purchaser/Debtor agrees to do whatever Secured Party requires Purchaser/Debtor to protect Secured Party's interest and to keep Secured Party's claim in the Collateral ahead of the claims of other creditors. Purchaser/Debtor shall keep the Collateral free and clear of all liens, charges, encumbrances, taxes and assessments, and shall pay all taxes, assessment and fees relating to the Collateral.   Upon request by Secured Party, Purchaser/Debtor shall furnish further assurances of title, execute any further instruments and do any other acts necessary to effectuate the purposes and provisions of this Agreement.

Purchaser/Debtor will keep books, records and accounts about the Collateral and

**Security Agreement, Page 7**

Purchaser/Debtor's business in general. Purchaser/Debtor will let Secured Party examine these and make copies at any reasonable time. Purchaser/Debtor will prepare any report or accounting Secured Party requests which deals with the Collateral.

Purchaser/Debtor shall not sell, lease, license, exchange, assign, transfer or otherwise dispose of the Collateral (including by granting security interest, liens, or other encumbrances in) and shall not encumber, hypothecate, mortgage, create a lien on or security interest in the Collateral, without the prior written consent of Security Party in each instance, except that Purchaser/Debtor may sell inventory in the ordinary course of business on customary terms. Any disposition of the Collateral contrary to this Agreement will violate Secured Party's rights. Secured Party's permission to sell the Collateral may be reasonably withheld without regard to the creditworthiness of any buyer or transferee. Purchaser/Debtor will not permit the Collateral to be subject of any court order affecting the Secured Party's rights to the Collateral in any action by anyone other than Secured Party. If the Collateral includes chattel paper or instruments, either as original collateral or as proceeds of the Collateral, Purchaser/Debtor will note Secured Party's interest on the face of the chattel paper or instruments. The risk of loss of the Collateral at all times shall be borne by Purchaser/Debtor. Purchaser/Debtor shall keep the Collateral in good repair and condition and shall not misuse, abuse or waste the Collateral or allow the Collateral to deteriorate except for normal wear and tear.

The Collateral shall be kept at Purchaser/Debtor's place of business set forth on **Schedule A,** except for temporary removal in connection with its ordinary use or unless Purchaser/Debtor shall have obtained the prior written consent of Secured Party for its removal to another location. Secured Party shall have the right to enter upon Purchaser/Debtor's premises at any reasonable

**Security Agreement, Page 8**

time, and from time to time, to inspect the Collateral. Purchaser/Debtor must promptly notify Secured Party by written communication of any change in location of the Collateral, specifying the new location.

Purchaser/Debtor will not settle any Account for less than its full value without Secured Party's written permission. Until Secured Party tells Purchaser/Debtor otherwise, Purchaser/Debtor will collect all Accounts in the ordinary course of business. Purchaser/Debtor will not dispose of the Accounts by assignment without Secured Party's written consent. Purchaser/Debtor will keep the proceeds from all the Accounts and any good which are returned to Purchaser/Debtor or which Purchaser/Debtor takes back. Purchaser/Debtor will not commingle them with any of Purchaser/Debtor's other property. At Secured Party's request, Purchaser/Debtor will deposit all payments received from the Accounts into the Collateral Account and notify Account Purchaser/Debtors that their Accounts have been assigned to Purchaser/Debtor and should be paid directly to Purchaser/Debtor. Purchaser/Debtor will deliver the Accounts to Secured Party at Secured Party's request. If Secured Party asks Purchaser/Debtor to pay Secured Party the full price on any returned items or items retaken by Purchaser/Debtor, Purchaser/Debtor will do so. Purchaser/Debtor will make no material change in the terms of any Account, and Purchaser/Debtor will give Secured Party any statements, reports, certificates, lists of Account Purchaser/Debtors (showing names, addresses and amount owing), invoices applicable to each Account, and other data in any way pertaining to the Accounts as Secured Party may request.

**SECTION 5. Default.** The occurrence of any one or more of the following events (herein

**Security Agreement, Page 9**

judgment or decree appointing a receiver, trustee, liquidator or conservator of Purchaser/Debtor (or any of the parties which comprise Purchaser/Debtor) or of the whole or any substantial part of property of Purchaser/Debtor (or any of the parties which compromise Purchaser/Debtor) or approves a petition filed against Purchaser/Debtor ( or any of the parties which comprise Purchaser/Debtor) seeking reorganization or similar relief under the Federal Bankruptcy Laws or any other applicable law or statute of the United states or any State; or if, under the provisions of any other law for the relief or aid of Purchaser/Debtors, a court of competent jurisdiction shall assume custody or control of Purchaser/Debtor ( or any of the parties which comprise Purchaser/Debtor) or the whole or any substantial part of its property; or if there is commenced against Purchaser/Debtor ( or any of the parties which comprise Purchaser/Debtor) any proceeding for any of the foregoing relief; or if Purchaser/Debtor ( or any of the parties which comprise Purchaser/Debtor) by any act indicates its consent to, approval of, or acquiescence in any such proceeding or petition; or

(d) If any creditor of Purchaser/Debtor (or any of the parties which comprise Purchaser/Debtor) for any  reason whatsoever hereafter shall accelerate payment in whole or in part of any outstanding obligation owed by Purchaser/Debtor (or any of the parties which comprise Purchaser/Debtor) under any agreement or arrangement, or if any judgment against the Purchaser/Debtor (or any of the parties which comprise Purchaser/Debtor) or any execution against any of its property for any amount remains unpaid, unstated or undismissed for a period in excess of ten (10) days; or

(e) If Purchaser/Debtor (or any of the parties which comprise Purchaser/Debtor) or any guarantor or surety of any Obligation shall die or cease to exist; or

**Security Agreement, Page 11**

referred to as "Events of Default") shall constitute a default hereunder, whether such occurrence is voluntary or involuntary or comes about or is effected by operation of law or pursuant to or in compliance with any judgment, decree or order of any court or any order, rule or regulation of any administrative or governmental authority:

(a) If Purchaser/Debtor (or any of the parties which comprise Purchaser/Debtor) shall fail to pay, perform or observe any promise, covenant, agreement, term or provision of this Agreement, the Note or any other agreement or arrangement now or hereafter entered into between the parties hereto or with respect to any Obligation of Purchaser/Debtor (or any of the parties which comprise Purchaser/Debtor) to Secured Party; or

(b) If any representation, warranty or other statement of fact herein or in any writing, certificate, report or statement at any time furnished to Secured Party pursuant to or in connection with this Agreement or the Note shall be false or misleading in any material respect; or

(c) If Purchaser/Debtor (or any of the parties which comprise Purchaser/Debtor) shall admit in writing its inability to pay its debts generally as they become due; file a petition for relief under the bankruptcy laws or a petition to take advantage of any insolvency act; make an assignment for the benefit of creditors; commence a proceeding for the appointment of a receiver, trustee, liquidator or conservator of itself or the whole or any substantial part of its property; file a petition or answer seeking reorganization or arrangement or similar relief under the Federal Bankruptcy Laws or any other applicable law or statute of the United States or any States; or if Purchaser/Debtor ( or any of the parties which comprise Purchaser/Debtor) shall be adjudged a bankrupt or insolvent, or a court of competent jurisdiction shall enter any order,

**Security Agreement, Page 10**

(f) If Purchaser/Debtor (or any of the parties which comprise Purchaser/Debtor) or any guarantor or surety of any Obligation shall be declared legally incompetent; or

(g) A default occurs under the terms of any other Loan Document; or

(h) Purchaser/Debtor is in default on any other debt or agreement Purchaser/Debtor has with Secured Party; or

(i) Purchaser/Debtor makes any verbal or written statement or provides any financial information that is untrue, inaccurate, or conceals a material fact at the time it is made or provided; or

(j) Purchaser/Debtor fails to satisfy or appeal any judgment against Purchaser/Debtor; or

(k) Purchaser/Debtor changes name or assume an additional name without notifying Secured Party before making such a change; or

(l) The Collateral is used in a manner or for a purpose that threatens confiscation by a legal Authority; or

(m) Purchaser/Debtor transfers all or substantial part of Purchaser/Debtor's money or Collateral; or

(n) Secured Party determines in good faith that the value of the Collateral has declined or is Impaired; or

(o) Secured Party determines in good faith that a material adverse change has occurred in Purchaser/Debtor's financial condition form the conditions set forth in Purchaser/Debtor's most recent financial statement before the date of this Agreement or that the prospect for payment or performance of the Secured Debts is impaired for any reason; or

(p) If there occur any reduction in the value of the Collateral or any act of Purchaser/Debtor

**Security Agreement, Page 12**

(or any of the parties which comprise Purchaser/Debtor) which imperils the prospect of the full performance or satisfaction of the Obligations; or

(q) If all or any part of the Collateral shall be sold, transferred or assigned, or shall be further encumbered, hypothecate, mortgage, or made subject to any other lien or security interest, without the prior written consent of Secured Party; or

(r) If an event of default by Purchaser/Debtor in payment of any installment due to Seller pursuant to Purchase Agreement shall have occurred and continued uncured for a period of fifteen (15) days after written notice. In the event of any such default, the Seller shall have all of the right and remedies set forth in the Purchase Agreement, the Notes and hereunder and, Purchase shall be in default pursuant to clause (ii) of the Section 4, the total amount of then unpaid principal and all accumulated interest thereon shall be deemed to have accrued and be immediately due and payable.

SECTION 6. Purchase Agreement and Note Controlling. This Agreement is subject to all of the terms and conditions of the Purchase Agreement and the Note, and in the event of a conflict between the terms and conditions of this Agreement and other terms and conditions of the Purchase Agreement or the Note, the terms and conditions of such other documents shall control.

SECTION 7. Representations and Warranties. Purchaser/Debtor represents and warrants that except as affected by the transaction contemplated hereby, the Collateral owned by Purchaser/Debtor is owned free and clear of any lien, security interest, charge or encumbrance and no effective financing statement or other instrument similar is effect covering all or any part of the Collateral is or will be on file in any recording office.

Security Agreement, Page 13

**SECTION 8. Further Assurances.**

(a) Purchaser/Debtor agrees that from time to time, at its expense, it will promptly execute and deliver all further instruments and documents, and take all further action, that may be necessary or that Seller may reasonably request, in order to perfect and protect the first priority security interest granted or purported to be granted hereby or to enable Seller to exercise and enforce its rights and remedies hereunder with respect to any Collateral.

(b) Purchaser/Debtor hereby authorizes Seller to file one or more financing or continuation statements, and amendments thereto, relative to all or any part of the Collateral without the signature of such parties where permitted by law; provided, however, that Seller shall use its best efforts to give Purchaser/Debtor notice by telephone or otherwise, of action on its part to make such filings without the signature of Purchaser/Debtor; provided, further, however, that failure to give such notice shall not impair the validity of any such filings nor affect any of the Seller's rights and remedies hereunder.

(c) Purchaser/Debtor will furnish to Seller from time to time statements and schedules further identifying and describing the Collateral and such other reports in connection with the Collateral as Seller may reasonably request, all in reasonable detail.

**SECTION 9. Insurance.**

(a) Purchaser/Debtor agrees to keep the Collateral insured against the risks reasonably associated with the Collateral. Purchaser/Debtor will maintain this insurance in the amounts Secured Party requires. This insurance will last until the Collateral is released from this Agreement. Purchaser/Debtor may choose the insurance company, subject to Secured Party's approval, which will not be unreasonably withheld.

**Security Agreement, Page 14**

(b) Purchaser/Debtor will have the insurance company name Secured Party as loss payee on any insurance policy. Purchaser/Debtor will give Secured Party and the insurance company immediate notice of any loss. Secured Party may apply the insurance proceeds toward what is owed on the Secured Debts. Secured Party may require additional security as a condition of permitting any insurance proceeds to be used to repair or replace the Collateral.

(c) If Secured Party acquires the Collateral in damaged condition, Secured Party's rights to any insurance policies and proceeds will pass to Secured Party to the extent of the Secured Debts.

(d) Purchaser/Debtor will immediately notify Secured Party of cancellation or termination of insurance. If Purchaser/Debtor fails to keep the Collateral insured, Secured Party may obtain insurance to protect Secured Party's interest in the Collateral and Purchaser/Debtor will pay for the insurance on Secured Party's demand. Secured Party may demand that Purchaser/Debtor pay for the insurance all at once, or Secured Party may add the insurance premiums to be balance of the Secured Debts and charge interest on it at the rate that applies to the Secured Debts. This insurance may include coverages not originally require of Purchaser/Debtor, may be written by a company other than one Purchaser/Debtor choose, and may be written at a higher rate than Purchaser/Debtor could obtain of Purchaser/Debtor purchased the insurance. Purchaser/Debtor acknowledges and agrees that Secured Party or one of Secured Party's affiliates may receive commission on the purchase of this insurance.

(e) In case of any loss involving damage to Collateral when subsection (f) of this Section is not applicable, Purchaser/Debtor shall make or cause to be made necessary repairs to or replacements of such Collateral, and any proceeds of insurance maintained by Purchaser/Debtor

**Security Agreement, Page 15**

pursuant to this Section may be paid to Purchaser/Debtor as reimbursement for the costs of such repairs or replacements.

(c) Upon (i) the occurrence, and during the continuance, of any event of default under the Note, or (ii) the payments in respect of such collateral shall be paid to, and applied by, Seller as specified in Section 13.

**SECTION 10. Transfers and Other Liens.** Purchaser/Debtor shall not:

(a) Sell, lease, transfer, assign (by operation of law or otherwise) or otherwise dispose of any of the Collateral;

(b) Create or suffer to exist any lien, security interest or there charge or encumbrance upon or with respect to any of the Collateral to secure debt of any person or entity, except for the security interest created by this Agreement and mechanics' carriers', workman's, repairmen's and other similar liens which arise by operation of law for amounts not yet due and payable;

(c) Permit the Corporation to sell, gift or in any other manner Transfer stock of the Corporation to any other person or interest except to those shareholders specified in Section 9(b) (ii) of the Purchase Agreement; and

(d) Permit the Corporation to grant to anyone a interest in, or any lien on, the Corporation's assets including the lease referred to in the Purchase Agreement.

**SECTION 11. Seller Appointed Attorney-in-Fact.** Purchaser/Debtor hereby irrevocable appoints Seller its attorney-in-fact, with full authority in its place and stead and in its name, seller's name or otherwise, from time to time in Seller's discretion, to take any action and to execute any instrument which seller may deem necessary or advisable to accomplish the purpose of this Agreement (subject to its rights under Section 8 hereof), including, without

**Security Agreement, Page 16**

limitation:

(a) to obtain and adjust insurance required to be paid pursuant to Section 8 hereof;

(b) to ask, demand, collect, sue for, recover, compromise, receive and five acquittance and receipts for moneys due to become due or in respect of any of the Collateral;

(c) to receive, endorse and collect any drafts or other instruments, documents and chattel paper, in connection with clause (a) or (b) above; and

(d) to file any claims or take any action or institute any proceeds which Seller may deem necessary or desirable for the collection of any of the collateral or otherwise to enforce the rights of Seller with respect to any of the Collateral. seller agrees that, in taking any action as attorney-in-fact for Purchaser/Debtor, it shall act in a commercially reasonable manner.

**SECTION 12. Due on Sale or Encumbrance.** Secured Party, at Secured Party's option, declare the entire balance of this Agreement to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, transfer or sale of all or any part of the Collateral. This right is subject to the restrictions imposed by federal law (12 C.F.R. 591), as applicable. However, if Purchaser/Debtor is in default under this Agreement, Purchaser/Debtor may not sell the inventory portion of the Collateral even in the ordinary course of business.

**SECTION 13. Rights and Remedies.** Upon the occurrence of an Event of Default, the Obligations shall immediately become due and payable in full without notice or demand. Secured Party shall have all rights and remedies provided by the Uniform Commercial Code in effect in the State of New Jersey on the date hereof. In addition to, or in conjunction with, or

**Security Agreement, Page 17**

substitution for such rights and remedies, Secured Party may at any time and from and after the occurrence of an Event of Default hereunder:

(a) Secured Party may make all or part of the amount owing by the terms of the Secured Debts immediately due.

(b) Secured Party may use any and all remedies Secured Party have under state or federal law or in any Loan Document.

(c) Secured Party may make a claim for any and all insurance benefits or refunds that may be available on Purchaser/Debtor's default.

(d) Amounts advanced on Purchaser/Debtor's behalf will be immediately due and may be added to the Secured Debts.

(e) Secured Party may attach or garnish Purchaser/Debtor's wage or earnings.

(f) Secured Party may require Purchaser/Debtor to gather the Collateral and make it available to Secured Party in a reasonable fashion.

(g) Secured Party may repossess the Collateral so long as the repossession does not involve a breach of the peace. Secured Party may sell, lease or otherwise dispose of the Collateral as provided by law. Secured Party may apply what Secured Party receives from the disposition of the Collateral to Secured Party's expenses, Secured Party's attorneys' fees and legal expenses (where not prohibited by law), and any debt Purchaser/Debtor owes Secured Party. If what Secured Party receives from the disposition of the Collateral does not satisfy the debt, Purchaser/Debtor will be liable for the deficiency (where permitted by law). In some cases, Secured Party may keep the Collateral to satisfy the debt.

**Security Agreement, Page 18**

Where a notice is required, Purchaser/Debtor agrees that ten days prior written notice sent by first class mail to Purchaser/Debtor's address listed in this Agreement will be reasonable notice to Purchaser/Debtor under the New Jersey Uniform Commercial Code. If the Collateral is perishable or threatens to decline speedily in value, Secured Party may, without notice to Purchaser/Debtor, dispose of any or all of the Collateral in a commercially reasonable manner at Purchaser/Debtor's expense following any commercially reasonable preparation or proceeding.

If any items not otherwise subject to this Agreement are contained in the Collateral when Secured Party takes possession, Secured Party may hold these items for Purchaser/Debtor at Purchaser/Debtor's risk and Secured Party will not be liable for taking possession of them.

(h) Secured Party may enter upon Purchaser/Debtor's premises and take possession of all or any part of Purchaser/Debtor's property (including the Liquor License) for the purpose of preserving the Collateral or its value, so long as Secured Party does not breach the peace. Secured Party may use and operate Purchaser/Debtor's Collateral for the length of time Secured Party feels is necessary to protect Secured Party's interest, all without payment or compensation to Purchaser/Debtor.

(i) By choosing any one or more of these remedies Secured Party does not give up Secured Party's right to use any other remedy. Secured Party does not waive a default if Secured Party chooses not use a remedy. By electing not to use any remedy, Secured Party does not waive Secured Party's right to later consider the event a default and to use any remedies if the default continues or occurs again.

(j) With or without notice to Purchaser/Debtor, foreclose the security interest created

**Security Agreement, Page 19**

herein by any available judicial procedure, or take possession of the Collateral, or any portion thereof., with or without judicial process, and enter any premises where the Collateral may be located for the purpose of taking possession of or removing the same, or rendering the same unusable, or disposing of the Collateral on such premises, and Purchaser/Debtor agrees bot to resist or interfere therewith;

(k) Require Purchaser/Debtor to prepare, assemble or collect the Collateral, at Purchaser/Debtor's own expense, and make the same available to Secured Party at such place as Secured Party may designate, whether at Purchaser/Debtor's premises or elsewhere;

(l) Sell, lease or otherwise dispose of all or any part of the Collateral, whether in its then condition or after further preparation, in Purchaser/Debtor's name or in its own name, or in the name of such party as Secured Party may designate, either at public or private sale ( at which Secured Party shall have the right to purchase), in lots or in bulk, for cash or for credit, with or without warranties or representations, and upon such other terms as Secured Party, in its sole discretion, may deem advisable. Ten days' written notice of such public sale date or dates after which private sale may occur, or such lesser period of time in the case of an emergency, shall constitute reasonable notice hereunder;

(m)Execute and deliver documents of title, certificates or origin, or other evidence of payment, shipment or storage of any Collateral or proceeds on behalf of and in the name of Purchaser/Debtor;

(n) Remedy may default by Purchaser/Debtor hereunder, without waving such default, and any monies expended in so doing shall be chargeable with interest to Purchaser/Debtor and added to the Obligations secured hereby; and

**Security Agreement, Page 20**

(o) Apply for an injunction to restrain a breach or threatened breach of this agreement by Purchaser/Debtor. If, after an Event of Default, Secured Party shall foreclose upon the security interest in the Collateral, Purchaser/Debtor shall pay to Secured Party, as compensation for the attorneys' fees of Secured Party, the greater of actual attorney's fees or an amount equal to 10 percent of the then outstanding Obligations.

(p) Seller may exercise in respect of the Collateral, in addition to other rights and remedies provided for herein or otherwise available to it, all the rights and remedies of a secured party under the Uniform Commercial Code (the "Code") (whether or not the Code applies to the affected Collateral) and also may (i) require Purchaser/Debtor to, and Purchaser/Debtor shall, execute and deliver any and all documents Seller shall deem necessary in order to transfer and vest title to all assets (including the Liquor License) sold pursuant to the Purchase Agreement to either Seller or to the shareholders in liquidation of Seller, (ii) require Purchaser/Debtor to, and Purchaser/Debtor hereby agrees that it will at its expense and upon the request of Seller forthwith, assemble all or part of the Collateral as directed by Seller and make it available to seller at a place to be designated by Seller and make it available to Seller at a place to be designated by Seller which is reasonably convenient to both parties and (ii) with such telephone or other notice, if any, as is practicable under the circumstances or as specified below, sell the Collateral or any part thereof in one or more parcels at public or private sale, at Seller's office or elsewhere, for cash, on credit or for future delivery, and at such price or prices and upon such other terms as Seller may deem commercially reasonable. Purchaser/Debtor agrees that, to the extent notice of sale shall be required by law, at least (10 days' notice to Purchaser/Debtor of the time and place of any public sale or the time after which any private sale is to be made shall

**Security Agreement, Page 21**

constitute reasonable notification. Seller shall not be obligated to make any sale of Collateral regardless of notice of sale having been given. Seller may adjourn any public or private sale from time to time by announcement at the time and place fixed therefor, and such sale may, without further notice, be made at the time and place to which it was so adjourned.

**SECTION 14. Indemnity and Expenses.**

(a) Purchaser/Debtor agrees to indemnify Seller from and against any and all claims, losses and liabilities growing out of or resulting from this Agreement (including, without limitation, enforcement of this Agreement), except claims, losses or liabilities resulting from Seller's gross negligence or willful misconduct.

(b) Purchaser/Debtor will demand pay to Seller the amount of any and all expenses, including the reasonable fees and disbursements or its counsel and of any experts and agents, which Seller may incur in connection with (i) the administration of this Agreement, (ii) the custody, preservation, use or operation of, or the sale of, collection from or other realization upon, any of the  Collateral, (iii) the exercise or enforcement of any of the rights of Seller hereunder, or (iv) the failure by Purchaser/Debtor to perform or observe any of the provisions hereof.

**SECTION 15. Notices.**  All notices, certificates or other communications hereunder shall be in writing and shall be deemed given when personally delivered or having been mailed by registered or certified mail, postage prepaid and addresses as follows:

(a) if to Purchaser/Debtor:

JJ BADA 464 OPERATING CORP.
464 Sylvan Avenue
Englewood Cliffs, New Jersey 07632

**Security Agreement, Page 22**

And

(b) if to Seller:

IL YEON KWON
c/o Noh & Kang, LLP
449 Broad Avenue, Unit 2-1
Palisades Park, NJ 07650

Each of the parties may, by notice given hereunder, designate any further or different addresses to which subsequent notices, certificates or other communications shall be sent, which notice shall be deemed effective three days after mailing or on the day of delivery of delivered by hand.

SECTION 16. Cumulative Rights. All rights, remedies and powers granted to Secured Party herein, or in any instrument or document related hereto, or provided or implied by law or in equity shall be cumulative and may be exercised singly or concurrently on any one or more occasions. Failure of Secured Party to enforce any rights or remedies will not constitute and estoppel or waiver of Secured Party's ability to exercise such rights or remedies. Unless otherwise required under applicable law, Secured Party is not liable for any loss or damages to Collateral in its possession or under its control nor will such loss or damage reduce or discharge the Obligations that are due even if Secured Party's actions or inactions caused or in any way contributed to such loss or damage.

SECTION 17. Purchaser/Debtor's Representations and Warranties. Purchaser /Debtor hereby represents and warrants to Secured Party that:

**Security Agreement, Page 23**

(a) Purchaser/Debtor waives all claims for loss or damage caused by Secured Party's acts or omissions where Secured Party acted reasonably and in good faith;

(b) Purchaser/Debtor is not in default under any indenture, mortgage, deed of trust, agreement or other instrument to which it is a party or by which it may be bound. Neither the execution nor the delivery of this Agreement, not the consummation of the transactions herein contemplated, nor compliance with the provisions hereof, will violate any law or regulation, or any order or decree of any count of governmental instrumentality, or will conflict with, or result in the breach of, or constitute a default under, any indenture, mortgage, deed of trust, agreement or other instrument to which Purchaser/Debtor is a party or by which Purchaser/Debtor may be bound, or result in the creation or imposition of any lien, charge or encumbrance upon any of the property of Purchaser/Debtor;

(c) Purchaser/Debtor has the right and authority to enter into this Agreement. The execution and delivery of this Agreement will not violate any agreement governing Purchaser/Debtor or to which the Purchaser/Debtor is a party. Purchaser/Debtor has the power to execute, deliver and perform the provisions of this Agreement and all instruments and documents delivered or to be delivered pursuant hereto, and has taken or caused to be taken all necessary and appropriate actions to authorize the execution, delivery and performance of this Agreement and all such instruments and documents.

(d) Purchaser/Debtor is the legal and equitable owner of the Collateral, free and clear of all liens, security interests, claims and encumbrances of every kind and nature. Secured Party's claim to the Collateral is ahead of the claims of any other creditor, except as disclosed in writing to Secured Party prior to any advance on the Secured Debts. Purchaser/Debtor represents that

**Security Agreement, Page 24**

he/she is the original owner of the Collateral and, if he/she is not, that Purchaser/Debtor has provided the Secured Party with a list of owners of the Collateral;

(e) No default exists, and no event which with notice or the passage of time, or both, would constitute a default under the Collateral by any party thereto, and there are no offsets, claims or defenses against the obligations evidenced by the Collateral, except as may be expressly set forth on Exhibit A hereto;

(f) Purchaser/Debtor must notify Secured Party by written notice not less than 30 days before taking any of the following actions: (i) changing or reorganizing the type of organization or form under which it does business; (ii) changing its name; (iii) changing its jurisdiction of organization; (iv) moving, changing its place of business or adding a place of business; (v) any change in his/her name or principal residence location; and

(g) In any of situation described in this Section above occurs, Purchaser/Debtor will pay for the preparation and filing of all documents, Secured Party deems necessary to maintain, perfect and continue the perfection of Secured Party's security interest.

**SECTION 18. Joint and Individual Liability and Successors.** Each Purchaser/Debtor's obligations under this Agreement is independent of the obligations of any other Purchaser/Debtor. Secured Party may sue each Purchaser/Debtor individually or together with any other Purchaser/Debtor. Secured Party may release any part of the Collateral and Purchaser/Debtor will still be obligated under this Agreement for the remaining Collateral. Purchaser/Debtor agrees that Secured Party and any party to this Agreement may extend, modify or make any change in the terms of this Agreement or any evidence of debt without Purchaser/Debtor's consent. Such a change will not release Purchaser/Debtor from the terms of

**Security Agreement, Page 25**

this agreement. If you assign any of the Secured Debts, you may assign all or any part of this Agreement without notice to Purchaser/Debtor or Purchaser/Debtor's consent, and this Agreement will inure to the benefit of Secured Party's assignee to the extent of such assignment. Secured Party will continue to have the unimpaired right to enforce this Agreement as to any of the Secured Debts that are not assigned. This Agreement shall inure to the benefit of and be enforceable by Secured Party and Secured Party's successors and assigns and any other person to whom Secured Party may grant an interest in the Secured Debts and shall be binding upon and enforceable against Purchaser/Debtor and Purchaser/Debtor's personal representatives, successors, heirs and assigns.

SECTION 19. Modification and Waiver. This Agreement and the other Loan Documents are the complete and final expression of the understanding between Secured Party and Purchaser/Debtor. If any provision of this Agreement is unenforceable, then the unenforceable provision will be severed and the remaining provisions will still be enforceable. No modification or waiver of any provision of this Agreement, and no consent by Secured Party to any breach thereof by Purchaser/Debtor, shall be effective unless such modification or waiver shall be in writing and signed by Secured Party and the same shall then be effective only for the period and on the conditions and for the specific instances and purposes specified in such writing. No course of dealing between Purchaser/Debtor and  Secured Party in exercising any rights or remedies hereunder shall operate as a waiver or preclude the exercise of any other rights or remedies hereunder. All such rights and remedies shall continue unimpaired, notwithstanding any delay, extension of time, renewal, compromise or other indulgence granted with regard to any of the Obligations. Purchaser/Debtor hereby waives all notice of any such delay, extension

**Security Agreement, Page 26**

of time, renewal, compromise or indulgence, and consents to be bound thereby as fully and effectually as if Purchaser/Debtor had expressly agreed thereto in advance. The aforesaid Note may be negotiated by Secured Party, without releasing Purchaser/Debtor or the Collateral.

SECTION 20. Severability. In the event any provision of this Agreement shall be held invalid or unenforceable by any court of competent jurisdiction, such holding shall not invalidate or render unenforceable any other provision hereof.

SECTION 21. Assignment. This Agreement may be assigned by Seller to any of its affiliates or to any subsequent holder of either Note. This Agreement may not be assigned by Purchaser/Debtor.

SECTION 22. Execution of counterparts. This Agreement may be executed in counterparts, each of which shall be an original and of which shall constitute one and the same instrument.

SECTION 23. Continuing Security Interest. This Agreement shall create a continuing security interest in the Collateral and shall (i) remain in full force and effect until payment in full of the Obligations secured hereby, (ii) be binding upon Purchaser/Debtor and its successors, and (iii) inure to the benefit of Seller and its successors, transferees and assigns. Upon the payment in full of the Obligations secured hereby, the security interest granted hereby shall terminate and all rights to the Collateral shall revert to Purchaser/Debtor. Upon any such termination, seller will, at Purchaser/Debtor's expense, execute and deliver to Purchaser/Debtor such documents as Purchaser/Debtor shall reasonably request to evidence such termination.

SECTION 24. Governing Law. This Agreement shall be governed by and construed in accordance with the laws of the State of New Jersey. Unless otherwise defined herein, terms

Security Agreement, Page 27

used in article 9 of the Uniform Commercial Code in the State of New Jersey are used herein as therein defined. All capitalized terms used herein and not otherwise defined shall have the same meaning as set forth in the Purchase Agreement or the Notes.

**SECTION 25. Benefit.** This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, executors, administrators, legal representatives, successors and assigns. Secured Party may assign this Agreement, and if assigned, the assignee shall be entitled, upon notifying Purchaser/Debtor, to the payment and performance of all, of the Obligations and agreements of Purchaser/Debtor hereunder and to all of the rights and remedies of Secured Party against the assignee.

**SECTION 26. General Provision.** (a) The gender and number used in this Agreement are used reference term only and shall apply with the same effect whether the parties are masculine, feminine, neuter, singular or plural; (b) Whenever used, the singular includes the plural and the plural includes the singular. The section headings are for convenience only and are not to be used to interpret or define the terms of this Agreement.

<< Signature Page to Follow>>

**Security Agreement, Page 28**

**IN WITNESS WHEREOF,** By signing under seal, the parties hereto have executed this

Agreement as of the day and year first above written.

**Witness or Attest:**

_____

IL YEON KWON, Secured Party

JJ BADA 464 OPERATING CORP.

_____

By _____

JIN CHUNG, President

STATE OF NEW JERSEY, COUNTY OF BERGEN}} SS.

*New York                    Queens*

BE IT REMEMBERED, that on this 7 day of January, 2020, before me the subscriber,
an Attorney at Law of the State of New Jersey or Notary Public personally appeared **IL YEON
KWON**, who, I am satisfied, is one of the persons mentioned in the within instrument, to whom
I first made known the contents thereof, and thereupon he acknowledged that he signed, sealed
and delivered the same as his voluntary act and deed for the uses and purposes expressed therein.

CHANGKUN CHUN
NOTARY PUBLIC-STATE OF NEW YORK
No. 02CH6377553
Qualified In Queens County
My Commission Expires 07-02-2022

STATE OF NEW JERSEY, COUNTY OF BERGEN}} SS.

BE IT REMEMBERED, that on this 4 day of January 2020, before me the subscriber,
an Attorney at Law of the State of New Jersey or Notary Public personally appeared **JIN
CHUNG**, individual and president of JJ BADA 464 OPERATING CORPORATION, who, I am
satisfied, is one of the persons mentioned in the within instrument, to whom I first made known
the contents thereof, and thereupon he acknowledged that he signed, sealed and delivered the
same as his voluntary act and deed for the uses and purposes expressed therein.

**Security Agreement, Page 29**

## SCHEDULE A

A. All present and future accounts receivable, accounts, general intangibles, notes, bills, acceptances, chattel paper, instruments, letters of credit and other forms of obligations and security relating accounts receivable and all proceeds, substitutions, accessions and replacements of the above, including but not limited to inventory returned or reclaimed from account debtors.

B. Inventory of every nature, kind and description where located, whether presently owned or hereafter acquired by the debtor, including but not limited to raw materials, and work in process and finished goods and materials and supplies used or consumed in the debtor's business and all inventory returned or reclaimed from customers, and all proceeds, substitutions, accessions and replacements of the above.

C. All machinery and equipment, including spare and extra parts used therein, accessories, appliances, and furniture and fixtures, located in the place of business, and any and all substitutions, replacements, proceeds or accessions of all of the foregoing.

D. General Intangibles of the debtor, including but not limited to all now owned an hereafter acquired rights to property, chooses in actions and all present and future trademarks, trade names, service marks, copy rights and patents, and all rights under license agreements for the use of same and all right to the use of debtor's corporate name.

E. Chattel Paper - Any and all now owned or hereafter acquired writing or writings which evidence both a money obligation and a security in, or a lease of, specific goods. When a transaction is evidenced both by such a security agreement or a lease and by an Instrument or series of Instruments, the group of writings taken together constitutes Chattel Paper.

F. Instruments - All now owned or hereafter acquired negotiable instruments or a security, or any other writing which evidences a right to the payment of money and is not itself a security agreement or lease and is of the type which is, in the ordinary course of business, transferred by delivery with any necessary endorsement or assignment.

G. Documents - all now owned or hereafter acquired bills of lading, dock warrants, dock receipts, warehouse receipts or orders for the delivery of goods, and also any other documents which in the regular course of business or financing is treated as adequately evidencing that the person who is in possession of it is entitled to receive, hold and dispose of the document and the goods it covers.

H. All present and future books and records, including, without limitation, patient files ( to the extent assignable) credit files, computer programs, print-outs and other computer materials and records of debtor, pertaining to any of the foregoing and all rights to debtor's telephone numbers.

I. The principal place of business is located at 464 Sylvan Avenue, Englewood Cliffs, New Jersey.

**Security Agreement, Page 30**

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)
JINA KANG                                    5514972657

B. E-MAIL CONTACT AT FILER (optional)
JINAKANG.ESQ@GMAIL.COM

C. SEND ACKNOWLEDGMENT TO:  (Name and Address)

JINA KANG
449 BROAD AVENUE UNIT 2-1
Palisades Park, NJ 07650
US

State of New Jersey
Department of the Treasury
Division of Revenue & Enterprise Services
UCC Section
Filed

Filing Number:53875192

02/24/20 10:56:29

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| JJ BADA 464 OPERATING CORP. | | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 464 Sylvan Avenue | Englewood Cliffs | NJ | 07632 | US |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| PARK | BRANDON | | | |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 464 Sylvan Avenue | Englewood Cliffs | NJ | 07632 | US |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| KWON | IL YEON | | | |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| C/O NOH & KANG, LLP, 449 Broad Avenue, Unit 2-1 | Palisades Park | NJ | 07650 | US |

4. COLLATERAL: This financing statement covers the following collateral:

See attachment.

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction    ☐ Manufactured-Home Transaction    ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien    ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor    ☐ Consignee/Consignor    ☐ Seller/Buyer    ☐ Bailee/Bailor    ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:

UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

# UCC FINANCING STATEMENT **ADDITIONAL PARTY**

FOLLOW INSTRUCTIONS

**18. NAME OF FIRST DEBTOR:** Same as line 1a or 1b on Financing Statement; if line 1b was left blank because Individual Debtor name did not fit, check here ☐

| | |
|---|---|
| **18a. ORGANIZATION'S NAME** | |
| JJ BADA 464 OPERATING CORP. | |
| **OR** **18b. INDIVIDUAL'S SURNAME** | |
| | |
| **FIRST PERSONAL NAME** | |
| | |
| **ADDITIONAL NAME(S)/INITIAL(S)** | **SUFFIX** |

State of New Jersey
Department of the Treasury
Division of Revenue & Enterprise Services
UCC Section
Filed

Filing Number:53875192

02/24/20 10:56:29

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

**19. ADDITIONAL DEBTOR'S NAME:** Provide only one Debtor name (19a or 19b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 19a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| **OR** **19b. INDIVIDUAL'S SURNAME** | **FIRST PERSONAL NAME** | | **ADDITIONAL NAME(S)/INITIAL(S)** | | **SUFFIX** |
| CHUNG | JIN | | | | |
| **19c. MAILING ADDRESS** | **CITY** | **STATE** | **POSTAL CODE** | | **COUNTRY** |
| 464 Sylvan Avenue | Englewood Cliffs | NJ | 07632 | | US |

**20. ADDITIONAL DEBTOR'S NAME:** Provide only one Debtor name (20a or 20b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 20a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| **OR** **20b. INDIVIDUAL'S SURNAME** | **FIRST PERSONAL NAME** | **ADDITIONAL NAME(S)/INITIAL(S)** | | **SUFFIX** |
| | | | | |
| **20c. MAILING ADDRESS** | **CITY** | **STATE** | **POSTAL CODE** | **COUNTRY** |
| | | | | |

**21. ADDITIONAL DEBTOR'S NAME:** Provide only one Debtor name (21a or 21b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 21a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| **OR** **21b. INDIVIDUAL'S SURNAME** | **FIRST PERSONAL NAME** | **ADDITIONAL NAME(S)/INITIAL(S)** | | **SUFFIX** |
| | | | | |
| **21c. MAILING ADDRESS** | **CITY** | **STATE** | **POSTAL CODE** | **COUNTRY** |
| | | | | |

**22.** ☐ **ADDITIONAL SECURED PARTY'S NAME** or ☐ **ASSIGNOR SECURED PARTY'S NAME:** Provide only one name (22a or 22b)

| 22a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| **OR** **22b. INDIVIDUAL'S SURNAME** | **FIRST PERSONAL NAME** | **ADDITIONAL NAME(S)/INITIAL(S)** | | **SUFFIX** |
| | | | | |
| **22c. MAILING ADDRESS** | **CITY** | **STATE** | **POSTAL CODE** | **COUNTRY** |
| | | | | |

**23.** ☐ **ADDITIONAL SECURED PARTY'S NAME** or ☐ **ASSIGNOR SECURED PARTY'S NAME:** Provide only one name (23a or 23b)

| 23a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| **OR** **23b. INDIVIDUAL'S SURNAME** | **FIRST PERSONAL NAME** | **ADDITIONAL NAME(S)/INITIAL(S)** | | **SUFFIX** |
| | | | | |
| **23c. MAILING ADDRESS** | **CITY** | **STATE** | **POSTAL CODE** | **COUNTRY** |
| | | | | |

**24. MISCELLANEOUS:**
The filer attests that the Collateral set forth in this Financing Statement is within the scope of the New Jersey Uniform Commercial Code-Secured Transactions pursuant to N.J.S.A. 12A:9-102 and N.J.S.A. 12A:9-109, as required by N.J.S.A. 12A:9-502.